ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL 25 PM 2:30
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| MICHAEL S. FINN, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-026 |
| ) | |
| JASON MEDLIN, Warden, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants.[1] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I. **SCREENING OF THE COMPLAINT**

   A. **BACKGROUND**

   Plaintiff names the following Defendants: (1) Jason Medlin, Warden; (2) the Corrections

---

[1] Under 28 U.S.C. § 1915(b)(4), a prisoner cannot be prohibited from bringing a civil action because he is unable to pay an initial fee; thus, the Court will proceed to screen Plaintiff's complaint even though he is unable to pay any initial partial filing fee. However, in accordance with the terms of the Consent to Collection of Fees form which Plaintiff signed, he remains liable for the full $350.00 filing fee.

Corporation of America ("CCA"); (3) Brian Owens, the Commissioner of the Georgia Department of Corrections; (4) M. Quinn, Deputy Warden; (5) J. Miles, Deputy Warden; (6) L. Harris, Chief of Security; (7) S. Smith, Chief of Classification; (8) Ron Day, Chaplain, (9) J. Phillips, Facilitator, and (10) Jane Does and John Does. (Doc. no. 1, pp. 1, 4.) Plaintiff names all Defendants in their individual and official capacities. (Id.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff, who is currently incarcerated at WCF, was moved into the "faith-based program dorm" on March 7, 2012. (Id. at 5.) Plaintiff alleges that he was moved out of the dorm on May 24, 2012, however, "simply because [he is] an insulin dependent diabetic." (Id.) According to Plaintiff, an inmate "must live in the faith-base dorm to attend the program" and "[i]nsulin diabetics are the only group of inmates not allowed to participate in the faith-base program." (Id.)

Plaintiff filed an informal grievance, which was denied, followed by a formal grievance, which was denied by Warden Medlin, and he appealed Warden Medlin's decision to Inmate Affairs and Appeals. (Id.) Plaintiff asserts that Warden Medlin "misinformed Inmate Affairs by telling Ms. S. Fields that 200Q [and] 200S position diabetics in close proximity to the Medical Unit. Yet, there is a medical unit next to 900 unit (where the faith-base dorms are) that is staffed 24 hrs. a day." (Id.) Plaintiff was moved into the "theology dorm" in September of 2012, "[d]uring the grievance process," and he was moved out on October 5, 2012, which he again asserts was "for being diabetic." (Id.) Plaintiff was then moved back into the "faith-base dorm at least until the appeal came back," before he was moved out in December of 2012. (Id.)

Plaintiff alleges that in November 2012, CCA, Warden Medlin, and unspecified "staff"

2

began retaliating against him for filing the grievance. (Id. at 6.) Plaintiff's "security was raised to medium without reason," when he had been "minimum for 10 years" and "had a security review every year." (Id.) Plaintiff's counselor, Juantherese Atkins, told him his security was raised "because [his] time was more than 13 years." (Id.) Additionally, Plaintiff's Offender Management Schedule "was printed up blank, so [he] didn't have faith-base on it," which he asserts "was done to prevent [him] from being able to even participate in the faith-base program at all." (Id.)

Plaintiff asserts that Commissioner Owens, of the Georgia Department of Corrections, "is legally responsible for overall operation of the Department and each institution under its jurisdiction, including [WCF]." (Id.) Plaintiff also asserts that CCA "is the owner of [WCF] and is responsible for hiring [WCF's] current warden Jason Medlin and is responsible for Warden Medlin's actions, and all their employees." (Id. at 6-7.) Finally, Plaintiff alleges that Warden Medlin "is legally responsible for his actions as well as the actions of all employees at [WCF]." (Id. at 7.)

Plaintiff also submitted an "Amendment" to his complaint in which he alleges that as "an insulin dependent diabetic he is classified as disabled" and seeks to add a claim under Title II of the ADA.[2] (Doc. no. 5.) Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. (Doc. no. 1, pp. 7, 8-9.)

---

[2]While the preferred method for amendment is to include all allegations in a single document rather than amending in a piecemeal fashion, the Court will in this instance read Plaintiff's "Amendment" in conjunction with his original complaint. Accordingly, the documents that the Court is screening include Plaintiff's original complaint and the "Amendment." (Doc. nos. 1, 5.) For ease of reference, the Court will hereinafter refer to these two documents collectively as Plaintiff's "complaint."

3

B.  **DISCUSSION**

1.  **Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, of if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S.

4

at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*); Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Failure to State Free Exercise or RLUIPA Claim

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that Plaintiff fails to state a Free Exercise or RLUIPA claim. Plaintiff asserts that his rights under the Free Exercise Clause of the First Amendment and RLUIPA are being violated because he is not being allowed to live in the "faith-based" dorm at WCF.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citations omitted). However, this right is not absolute, nor is it as expansive as the right enjoyed by persons in free society. Id.; Hakim v. Hicks, 223 F.3d 1244, 1247 (11th Cir. 2000). Although prisoners cannot always be fully accommodated for the needs of their religious faith, they are entitled to "reasonable opportunities . . . to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). "[A] complaint fails to state a Free Exercise claim," however, "if it does not allege that (1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief."

5

GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1256-57 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 856 (U.S. 2013).

Here, Plaintiff asserts that his free exercise rights have been violated, but he does not actually allege any impact on his ability to hold his religious beliefs or act pursuant to them. Rather, while presented as a free exercise claim, all of Plaintiff's allegations concern his desire to live in a particular dorm which happens to provide a "faith-based" program.[3] Prisoners do not have a *constitutionally* protected interest in a particular housing assignment, however. See, e.g., McKune v. Lile, 536 U.S. 24, 39 (2002).

Indeed, Plaintiff does not allege that he is unable to attend any religious services, nor that he is unable to observe his beliefs privately. In the absence of any allegation that he is actually being hindered from holding his religious beliefs or acting pursuant to them, Plaintiff fails to state a free exercise claim. See GeorgiaCarry.Org, Inc., 687 F.3d at 1256-57; see also Mayo v. Norris, 2:09CV00088-SWW-JJV, 2009 WL 3148677, at *2 (E.D. Ark. Sept. 28, 2009) (prisoner plaintiff who was denied a request to live in a single-person cell, "to be separate from those who do not obey the doctrine of Jesus," failed to allege a constitutional deprivation); Byrd v. L.C.S. Corr. Servs., Inc., CIV.A. 07-0029, 2007 WL 2156583, at *11-12 (W.D. La. Apr. 27, 2007) (concluding that prisoner plaintiff failed to state a free exercise claim based on prison's failure to provide a "faith-based honor dorm" when he did not allege he had been deprived of other means of religious expression or that his right to worship had been curtailed in any way by prison officials); Ward v. Lee, 3:11-CV-0330, 2011 WL 4381947, at *5-6 (W.D. La. Aug. 11,

---

[3] In one of the attachments submitted with his complaint, Plaintiff explains that "[l]iving in the faith-based dorm is a life style change. I'm around other Christians without the worry of theft, drugs, cell phones or cigarettes or any other trouble." (Doc. no. 1, p. 22.)

2011) (plaintiff who alleged he was being denied the privilege to attend prison chapel after conviction of disciplinary offense failed to state claim under the First Amendment where he did not allege "that he is totally prohibited from practicing Christianity" or "that he is prohibited from maintaining his beliefs and praying and studying on his own").

Plaintiff similarly fails to state a claim under RLUIPA, which prohibits state programs that receive federal funding from imposing a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1. "To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Gardner v. Riska, 444 F. App'x 353, 354-55 (11th Cir. 2011) (quoting Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 131 S.Ct. 1651 (U.S. 2011)). A substantial burden is something more than an "incidental effect" or an "inconvenience" on a religious exercise. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1225 (11th Cir. 2004); see also McCree v. Pocock, CIVA 1:06CV1279 TWT, 2007 WL 1810143, at *4 (N.D. Ga. June 19, 2007) ("A demonstration that the Plaintiff has been forced to perform a version of his religious precept that is 'not preferred' is insufficient under the Eleventh Circuit's standard to establish a prima facie violation of RLUIPA."). Rather, "a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or behavior accordingly" or "tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." Midrash Sephardi, Inc., 366 F.3d at 1227; see also Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) (a "substantial burden" under RLUIPA is one which "truly pressures the adherent to significantly modify his religious behavior and significantly

7

violate his religious beliefs.").

Here, Plaintiff has not alleged a substantial burden on his exercise of religion for purposes of RLUIPA. Plaintiff does not allege that he has been forced to forego any religious precepts or violate his religious beliefs, and, as discussed above, he has not even alleged an incidential burden on his ability to practice his religion by not being able to live in a "faith-based" dorm, let alone a substantial burden. See Ward, 2011 WL 4381947, at *6 (plaintiff who alleged he was being denied the privilege to attend prison chapel after conviction of disciplinary offense failed to state a claim under RLUIPA where he "never alleged that the defendants have done anything to pressure him to modify his religious behavior or violate his beliefs or the tenets of Christianity"). Accordingly, Plaintiff fails to state a *prima facie* case under RLUIPA.

In sum, Plaintiff has failed to state a claim upon which relief may be granted under either the Free Exercise Clause of the First Amendment or RLUIPA based on his allegation that he is not allowed to live in the "faith-based" dorm at WCF.

### 3. Failure to State Retaliation Claim

The Court also finds that Plaintiff fails to state a viable retaliation claim. Plaintiff alleges two instances of allegedly retaliatory conduct for his filing of administrative grievances: first, that his "Offender Management Schedule" was "printed up blank, so [he] didn't have faith-base on it" and could not participate in the faith-based program, and, second, that his security level was changed. (Doc. no. 1, p. 6.) The first problem with these allegations is that Plaintiff does not allege who specifically was responsible for either event. "Section 1983," however, "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Plaintiff fails

8

to allege such a causal connection, and on that basis alone, fails to state a retaliation claim.

In any event, under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254. Of note, there must be a causal connection between the protected speech and the retaliatory action. Id. at 1250; O'Bryant v. Finch, 637 F.3d 1207, 1216-20 (11th Cir. 2011).

Plaintiff first asserts that his "Offender Management Schedule" was printed without a designation for him to attend the "faith-based" program offered in the "faith-based" dorm. (Doc. no. 1, p. 6.) Yet Plaintiff clearly indicates that only inmates who live in the "faith-based" dorm at WCF can participate in the "faith-based" programming there. (See id. at 5, 15.) That Plaintiff's "Schedule" was printed without a designation for him to attend the "faith-based" programming after he was moved from that dorm was hardly retaliatory, then. Rather, it was simply the consequence of no longer living in that dorm and no longer being eligible for that program.

Plaintiff also alleges that his security level was raised from minimum to medium

9

"without reason." (Doc. no. 1, p. 6.) Even if that were a sufficiently adverse action,[4] Plaintiff offers only a conclusory allegation that the change in his security level was causally connected to his protected speech – the informal and formal grievances he filed complaining about his transfer out of the "faith-based" dorm. See O'Bryant, 637 F.3d at 1220; see also Smith v. Florida Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*) (conclusory allegations of a retaliatory motive are insufficient to raise the allegation of retaliation above the speculative level) (citing Iqbal, 556 U.S. at 680). Moreover, Plaintiff filed his informal grievance on May 24, 2012, and Warden Medlin received Plaintiff's formal grievance on August 6, 2012. (Doc. no. 1, pp. 11, 14.) Yet the allegedly retaliatory conduct of which Plaintiff complains did not begin until November of 2012, more than five months after Plaintiff filed his informal grievance and three months after Warden Medlin reviewed his formal grievance. This temporal gap is too great, without other facts, to infer causation. See Bailey v. Hughes, 815 F. Supp. 2d 1246, 1270 (M.D. Ala. 2011) (noting that a temporal gap of three months precluded Title VII retaliation claim and concluding that "[t]here is no reason to think that this standard would apply any differently" in the prison context) (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)); cf. Hicks v. Ferrero, 241 F. App'x 595, 598 (11th Cir. 2007) (*per curiam*) (prisoner sufficiently alleged causal connection where warden and assistant warden raised his security level one month after he filed the first of multiple grievances).

For these reasons, Plaintiff has failed to state a retaliation claim upon which relief may be granted.[5]

---

[4]Plaintiff does not actually allege that he suffered any consequences as a result of his increased security level.

[5]If Plaintiff is attempting to assert a retaliation claim under the ADA, it fails for the same reasons as his § 1983 retaliation claim. To establish a *prima facie* case of retaliation under the

10

### 4. Failure to State Claim under Title II of the ADA Against CCA and its Employees and Commissioner Owens in His Individual Capacity

Finally, while the Court has concluded in a simultaneously-issued Order that Plaintiff has sufficiently alleged a claim under Title II of the ADA against Commissioner Owens in his official capacity, the Court concludes that Plaintiff fails to state a claim against CCA and its employees – Warden Medlin and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and Jane Does – or against Commissioner Owens in his individual capacity.

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" United States v. Georgia, 546 U.S. 151, 153 (2006) (citing 42 U.S.C. § 12132). To state a viable Title II claim, a plaintiff must prove that

> (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a *public entity's* services, programs, or activities, or was otherwise discriminated against by the *public entity*; and (3) the exclusion, denial of benefit, or discrimination was by reason of his disability.

Ganstine v. Sec'y, Florida Dep't of Corr., 502 F. App'x 905, 910 (11th Cir. 2012) (*per curiam*) (emphasis added) (citing Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Although CCA has contracted with the Georgia Department of Corrections to house prisoners, it does not constitute a "public entity" within the meaning of Title II. See 42 U.S.C. § 12131(1); Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010) (concluding that private

---

ADA, "a plaintiff must show that (1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse . . . action; and (3) the adverse action was causally related to the protected expression." Higdon v. Jackson, 393 F.3d 1211, 1219 (11th Cir. 2004) (quoting Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1180 (11th Cir. 2003)). For the reasons discussed above, Plaintiff has failed to make that showing with respect to the allegedly retaliatory conduct in his complaint.

prison management corporation operating a Florida state prison was not a "public entity" subject to liability under Title II of ADA); see also Phillips v. Tiona, 508 F. App'x 737, 747-54 (10th Cir. 2013) (holding that Title II of the ADA does not generally apply to private corporations that operate prisons, particularly CCA); Maringo v. Warden, Corrs. Corp. of America, 283 F. App'x 205, 205 (5th Cir. 2008) (*per curiam*) (concluding, *inter alia*, that Title II is inapplicable to CCA or its employees). Accordingly, Plaintiff's Title II claims against CCA are due to be dismissed.

Moreover, Plaintiff's Title II claims against CCA's employees – Warden Medlin and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and Jane Does – in their official capacities are also due to be dismissed. See Edison, 604 F.3d at 1308 n.1 (treating plaintiff's claims against private corporation's employees in their "official capacities" as claims against the "alleged 'public entity'" itself); see also Rickerson v. Gills, 5:11-CV-279-MP-GRJ, 2012 WL 1004733, at *2-3 (N.D. Fla. Feb. 8, 2012) (recommending dismissal of claims against CCA and its employees in their official capacities because CCA is not a public entity), *adopted by* 2012 WL 1004724 (N.D. Fla. Mar. 22, 2012).

Plaintiff has also named Warden Medlin, Commissioner Owens, and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and Jane Does in their individual capacities. However, "there is no individual capacity liability under Title II of the ADA[.]" Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005) (*per curiam*); see also Smith v. Rainey, 747 F. Supp. 2d 1327, 1340 (M.D. Fla. 2010) ("It is settled that Title II of the ADA does not permit individual capacity suits."). Plaintiff's individual capacity Title II claims are thus also due to be dismissed.

In sum, Plaintiff has failed to state a claim upon which relief may be granted against CCA, Warden Medlin, and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and

Jane Does, and they should be dismissed from this case.[6]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the following of Plaintiff's claims be **DISMISSED**: his free exercise, RLUIPA, and retaliation claims; his claims under Title II of the ADA against CCA; his claims under Title II against Warden Medlin, and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and Jane Does in their official and individual capacities; and his claim under Title II against Commissioner Owens in his individual capacity. The Court further **RECOMMENDS** that the following Defendants be **DISMISSED**: CCA, Warden Medlin, and Defendants Quinn, Miles, Harris, Smith, Day, Phillips, and John and Jane Does.

SO REPORTED and RECOMMENDED this 25th day of July, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[6]As noted above, in a simultaneously issued Order, the Court has allowed Plaintiff to proceed with a claim against Commissioner Owens in his official capacity under Title II of the ADA.

13